## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DEBORAH N. MOUTON-MILLER,
            Appellant,

        v.

DEPARTMENT OF HOMELAND
   SECURITY,
            Agency.

DOCKET NUMBERS
AT-1221-19-0742-W-4
AT-1221-21-0039-W-4

DATE: September 11, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Danielle B. Obiorah</u>, Esquire, Jonesboro, Georgia, for the appellant.

<u>Shaun C. Southworth</u>, Esquire, Atlanta, Georgia, for the appellant.

<u>Marlon Martinez</u>, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### FINAL ORDER

¶1     The appellant has filed petitions for review of the initial decisions in MSPB Docket Nos. AT-1221-19-0742-W-4 (0742 appeal) and AT-1221-21-0039-W-4 (0039 appeal), which denied her requests for corrective action in these individual

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

right of action (IRA) appeals. Generally, we grant petitions such as these ones only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). For the reasons discussed below, we JOIN these appeals. After fully considering the filings in these appeals, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petitions for review. Therefore, we DENY the petitions for review and AFFIRM the initial decisions, except as expressly MODIFIED in *Mouton-Miller v. Department of Homeland Security*, MSPB Docket No. AT-1221-19-0742-W-1, to clarify the administrative judge's findings regarding the first *Carr* factor.

## JOINT BACKGROUND

¶2        Effective April 2, 2017, the agency's Office of the Inspector General promoted the appellant to a GS-14 Supervisory Auditor, subject to her successful completion of a 1-year supervisory probationary period. *Mouton-Miller v. Department of Homeland Security*, MSPB Docket No. AT-1221-19-0742-W-1, Appeal File (0742 IAF), Tab 15 at 28. In September 2017 and February 2018, the appellant sent emails to agency management officials disclosing that audit templates contained in the agency's internal audit management and template repository system, TeamMate, were missing some of the steps necessary to perform audits in accordance with Generally Accepted Government Auditing Standards (GAGAS) (also called the "Yellow Book" standard), as required by the

Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat. 1101. *Mouton-Miller v. Department of Homeland Security*, MSPB Docket No. AT-1221-21-0039-W-4, Appeal File (0039-W-4 AF), Tab 13 at 57-63. Effective March 29, 2018, the appellant's then first-line supervisor issued a memorandum informing her that she had failed to successfully complete her supervisory probationary period and that she would be reassigned to a position as a non-supervisory GS-14 Communications Analyst, effective immediately. 0742 IAF, Tab 15 at 26-27.

¶3     On June 11, 2019, the appellant filed a complaint with the Office of Special Counsel (OSC) alleging that the agency curtailed her supervisory probationary appointment in retaliation for her protected disclosures concerning the agency's failure to comply with the GAGAS standards. 0742 IAF, Tab 10 at 8-46. By a letter dated August 27, 2019, OSC closed its investigation into the appellant's complaint and notified her of her Board appeal rights. *Id.* at 47-48. On August 28, 2019, the appellant filed an IRA appeal challenging the agency's decision to reassign her to a nonsupervisory position during her supervisory probationary period. 0742 IAF, Tab 1.

¶4     Following her reassignment to a nonsupervisory position in March 2018, the appellant applied to but was not selected for several detail assignments and vacancies within the agency, as well as additional vacancies at other agencies. Specifically, in August 2018, she made an inquiry to her supervisor regarding a potential detail opportunity within the agency's Audits and Inspections Quality Assurance Division (IQO) but was ultimately not selected for the detail assignment. *Mouton-Miller v. Department of Homeland Security*, MSPB Docket No. AT-1221-21-0039-W-1, Initial Appeal File (0039 IAF), Tab 1 at 10; 0039-W-4 AF, Tab 13 at 72-77. On December 19, 2018, she applied for a Supervisory Auditor position with the Defense Contract Audit Agency (DCAA) within the Department of Defense and was notified that she was not selected for that position on January 18, 2019. 0039 IAF, Tab 1 at 11. On March 4, 2019, she volunteered for a second detail opportunity with IQO and was informed on

March 19, 2019, that she was not selected for the detail. *Id.*; 0039-W-4 AF, Tab 13 at 29. In February 2020, she applied for a GS-15 position as a Director of Quality, Management, and Training (QMT) within the agency, and was interviewed for the position on February 20, 2020, but was ultimately not selected. 0039-W-4 AF at 16, 21-24; 0039 IAF, Tab 1 at 7-9. Finally, she applied to but was not selected for a position as a Lead Auditor with the Environmental Protection Agency (EPA) in or around April 2020. 0039 IAF, Tab 1 at 11-12.

¶5      On or about April 22, 2020, while her first IRA appeal was pending before an administrative judge, the appellant filed a second complaint with OSC alleging that the relevant agencies failed to promote or appoint her to the above-identified positions in retaliation for her protected disclosures concerning the agency's failure to comply with GAGAS standards. 0039 IAF, Tab 4 at 10, Tab 5. On August 23, 2020, after more than 120 days had elapsed since the appellant filed her second OSC complaint, she filed a second IRA appeal alleging that agency officials hindered or obstructed her ability to be appointed to or promoted to the identified vacancies and detail opportunities in retaliation for her GAGAS disclosure. 0039 IAF, Tab 1, Tab 4 at 10. Both appeals were eventually reassigned to a new administrative judge. *Mouton-Miller v. Department of Homeland Security*, MSPB Docket No. AT-1221-19-0742-W-4, Appeal File (0742-W-4 AF), Tab 15; 0039-W-4 AF, Tab 6.

¶6      After holding the appellant's requested hearings in each of the IRA appeals, 0742-W-4 AF, Tab 24; 0039-W-4 AF, Tab 28, the administrative judge issued separate initial decisions, 0742-W-4 AF, Tab 26 (0742 ID); 0039-W-4 AF, Tab 30 (0039 ID). In the first initial decision, dated November 9, 2022, he determined that the appellant had exhausted with OSC her claim that the agency ended her supervisory probationary period and reassigned her to a nonsupervisory position in retaliation for her disclosure concerning the agency's failure to comply with the GAGAS standards. 0742 ID at 7-8. He also incorporated the prior

administrative judge's finding that the Board had jurisdiction over the appellant's IRA appeal, a finding that neither party challenges on review. 0742 ID at 2; 0742 IAF, Tab 17. The administrative judge also determined that the appellant proved by preponderant evidence that she engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) that the agency violated a rule in connection with her GAGAS disclosures and that she was subjected to a covered personnel action in retaliation for her disclosure based on her reassignment to a nonsupervisory position. 0742 ID at 8. He further concluded that the appellant proved that her GAGAS disclosure was a contributing factor in the agency's decision to reassign her. 0742 ID at 8. However, he determined that the agency proved by clear and convincing evidence that it would have reassigned the appellant even in the absence of her protected disclosure and consequently found that she was not entitled to corrective action on her claim. 0742 ID at 9-16.

¶7        In the second initial decision, dated January 25, 2023, the administrative judge concluded that the appellant established that she exhausted with OSC her claim that in retaliation for her protected disclosure of the agency's failure to adhere to GAGAS standards, she was denied promotion or appointment opportunities for the following positions: detail assignments to IQO in August 2018 and March 2019; a Supervisory Auditor position with DCAA in January 2019; a Director of QMT position in March 2020; and a Lead Auditor position with EPA in April 2020. 0039 ID at 2, 7-8; 0039-W-4 AF, Tab 16. He also found that the Board had jurisdiction over the appellant's IRA appeal and that she was entitled to a hearing on the merits, which neither party challenges on review. 0039 ID at 3; 0039-W-4 AF, Tab 16 at 3-7. He further concluded that the appellant proved by preponderant evidence that she made a protected disclosure in connection with the agency's failure to adhere to GAGAS standards and that she was subjected to the above covered personnel actions. 0039 ID at 7-8; 0039-W-4 AF, Tab 16.

¶8        Addressing whether the appellant's disclosure was a contributing factor in any of the nonselection decisions, the administrative judge determined that, aside from the March 2019 IQO detail, the appellant failed to prove by preponderant evidence that her whistleblowing disclosure was a contributing factor in any of the remaining nonselection decisions.  0039 ID at 8-10, 12-15.  Regarding the March 2019 IQO detail nonselection, the administrative judge concluded that the appellant proved by preponderant evidence that her GAGAS disclosure contributed to the agency's decision not to select her for this detail.  0039 ID at 10-12.  He nevertheless concluded that the agency proved by clear and convincing evidence that it would not have selected her for the position even in the absence of her protected disclosure, and so she was not entitled to corrective action on her appeal.  0039 ID at 15-19.

¶9        The appellant timely filed a petition for review of each initial decision. *Mouton-Miller v. Department of Homeland Security*, MSPB Docket No. AT-1221-19-0742-W-4, Petition for Review (0742 PFR) File, Tab 1; *Mouton-Miller v. Department of Homeland Security*, MSPB Docket No. AT-1221-21-0039-W-4, Petition for Review (0039 PFR) File, Tab 5.  The agency filed responses in opposition to each petition for review.  0742 PFR File, Tab 3; 0039 PFR File, Tab 7.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We join these appeals.</u>

¶10       Joinder of two or more appeals filed by the same appellant may be appropriate when joinder would expedite processing of the appeals and not adversely affect the interests of the parties.  *Tarr v. Department of Veterans Affairs*, 115 M.S.P.R. 216, ¶ 9 (2010); *Boechler v. Department of the Interior*, 109 M.S.P.R. 542, ¶ 14 (2008), *aff'd per curiam*, 328 F. App'x 660 (Fed. Cir. 2009); 5 C.F.R. § 1201.36(a)(2), (b).  We join these appeals on review because the facts are interrelated, and joinder will expedite processing without adversely

affecting the interests of the parties. Specifically, the two IRA appeals concern the same alleged protected disclosure, and all of the allegedly retaliatory personnel actions occurred within the 2-year period from 2018 through 2020 and involved many of the same agency officials. Accordingly, joinder of these appeals is appropriate.

Legal standard applicable to IRA appeals.

¶11      The Board has jurisdiction over an IRA appeal if the appellant proves by preponderant evidence that she exhausted her administrative remedy before OSC and  makes nonfrivolous allegations  that (1) she  made  a  protected  disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under  5  U.S.C.  §  2302(b)(9)(A)(i),  (B),  (C),  or  (D);  and (2)  the  protected disclosure or protected activity was a contributing factor in the agency's decision to  take  or  fail  to  take  a  personnel  action  as  defined  by  5  U.S.C.  § 2302(a). *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 8, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

¶12      To establish the contributing factor criterion at the jurisdictional stage, the appellant need only raise a nonfrivolous allegation that the fact of, or the content of, the disclosure or activity was one factor that tended to affect the personnel action in any way. *Abernathy v. Department of the Army*, 2022 MSPB 37, ¶ 15. One way to establish this criterion is the knowledge/timing test, in which the appellant may demonstrate that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id*. Personnel actions occurring within 1 to 2 years after the protected disclosure are sufficient to meet the timing portion of the test. *Id*. The knowledge portion of the knowledge/timing test can be met with allegations of either actual or constructive knowledge. *Id*. An appellant may establish  an  official's  constructive  knowledge  of  a  protected  activity  by

demonstrating that an individual with actual knowledge of the activity influenced the official accused of taking the retaliatory action. *Id.*

¶13    However, the knowledge/timing test is not the only way to prove contributing factor. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). If an appellant fails to satisfy the knowledge/timing test, the Board will also consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed towards the officials taking the action, and whether these individuals had a desire or motive to retaliate against the appellant. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 15; *Dorney*, 117 M.S.P.R. 480, ¶ 15.

¶14    Once an appellant establishes jurisdiction over her IRA appeal, she is entitled to a hearing on the merits of her claim, which she must prove by preponderant evidence. 5 U.S.C. § 1221(e)(1); *Salerno*, 123 M.S.P.R. 230, ¶ 5. If she does so, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity. 5 U.S.C. § 1221(e)(2); *Salerno*, 123 M.S.P.R. 230, ¶ 5. In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the following (the "*Carr* factors"): (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Lu v. Department of Homeland*

*Security*, 122 M.S.P.R. 335, ¶ 7 (2015). The Board considers all of the evidence presented, including evidence that detracts from the conclusion that the agency met its burden. *Soto*, 2022 MSPB 6, ¶ 11; *see also Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). If the agency fails to meet its burden, the Board will order corrective action in favor of the appellant. *Abernathy*, 2022 MSPB 37, ¶ 17.

We modify the initial decision in the 0742 appeal to clarify the administrative judge's findings regarding the first *Carr* factor but still agree with his conclusion that this factor favors the agency.

¶15      The appellant argues on review in the 0742 appeal that the administrative judge erred by finding that each of the *Carr* factors weighed in the agency's favor. 0742 PFR File, Tab 1 at 9-11. We find no reason to disturb the administrative judge's finding that the agency met its burden of proving by clear and convincing evidence that it would have reassigned the appellant to a nonsupervisory position in the absence of her protected disclosure, but we take this opportunity to clarify his findings as to the first *Carr* factor.

¶16      In the initial decision, the administrative judge concluded that the first *Carr* factor, which concerns the strength of the agency's evidence in support of its action, favored the agency. 0742 ID at 9-13. Specifically, he determined that the agency's stated reason for reassigning the appellant to a nonsupervisory position based on her failure to complete her supervisory probationary period was supported by the record, acknowledging that even though she had a positive Fiscal Year (FY) 2017 performance appraisal rating, her supervisors and other agency management officials credibly identified performance deficiencies in the period immediately prior to the appellant's reassignment, including her micromanagement of her subordinates and her unwillingness to receive constructive criticism and feedback. 0742 ID at 9-12.

¶17      In making this finding, the administrative judge highlighted testimony from the appellant's second-level supervisor recounting that she expressed concerns to

the appellant about how she managed her team and about how one of the audits the appellant was managing was progressing. 0742 ID at 11-12; 0742 ID at 11-12; 0742-W-4 AF, Tab 24, Hearing Recording (0742 HR) 3 at 1:30-8:45 (testimony of the appellant's second-line supervisor). The second-line supervisor also recounted instances when the appellant repeatedly cut her off and accused the supervisor of "disrespect" and of using an inappropriate "tone," which the appellant's first-line supervisor considered to be inappropriate and for which he counseled the appellant.[2] 0742 ID at 11-12; 0742 HR 2 at 5:30-10:35 (testimony of the appellant's first-line supervisor); 0742 HR 3 at 9:30-21:00 (testimony of the appellant's second-line supervisor).

¶18    Finally, in finding that the agency established that the reassignment action was supported and that the first *Carr* factor favored the agency, the administrative judge opined that the Board and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) had not articulated any specific guidance for applying the clear and convincing evidentiary standard to the "very low threshold" for terminations of probationary employees, noting that agencies have broad discretion in determining an employee's fitness for a position during the probationary period. 0742 ID at 9, 12-13 (citing *Lewis v. Department of the Army*, 63 M.S.P.R. 119, 126 (1994)); *see Levy v. Department of Labor*, 118 M.S.P.R. 619, ¶ 11 (2012) (explaining that the Board lacks jurisdiction over the return of a supervisory employee to his prior position during his probationary period). He nevertheless acknowledged that the Board has held that the strength of the agency's evidence supporting its action must not turn on the protections to which an appellant is entitled and determined that the agency's reasons for terminating the appellant's

---

[2] Additionally, addressing the appellant's FY 2017 performance appraisal, the appellant's former first-line supervisor testified that although the appellant received a summary rating of "Achieved Excellence," the highest possible rating in the agency's 4-tiered performance rating scale, she received "Exceeded Expectations" ratings for the critical elements of "Communication," "Teamwork and Cooperation," and "Leadership," which were categories the supervisor identified as critical in assessing the appellant's supervisory potential. 0742 HR 1 at 17:05-23:40 (testimony of the appellant's former first-line supervisor).

supervisory appointment during her probationary period were credibly explained in finding that the first *Carr* factor favored the agency. 0742 ID at 13.

¶19 In *Lewis v. Department of the Army*, the case the administrative judge cited for the proposition that the agency proved by clear and convincing evidence that it would have terminated the appellant absent her protected disclosures, the Board observed that the appellant in that case was serving in a probationary period at the time his supervisor decided to terminate his employment and credited the supervisor's testimony expressing concern that the appellant would continue to encounter issues if granted a permanent position, noting that the supervisor's stated concern was consistent with the Office of Personnel Management's regulations "mandating that an agency use the probationary period to determine an employee's fitness, and that it '*shall* terminate his services during this period if he fails to demonstrate fully his qualifications for continued employment.'" *Lewis*, 63 M.S.P.R. at 126. However, in *Hugenberg v. Department of Commerce*, 120 M.S.P.R. 381, ¶ 19 & n.4 (2013), the Board acknowledged the appellant's argument that the administrative judge erred by referring to him as a "probationary employee," and by further finding that the agency's stated reason for terminating him was a "facially legitimate reason for termination" and that the agency had "great latitude in assessing whether to retain [a probationary] employee" during the probationary period, in the context of analyzing whether the agency met its clear and convincing evidence burden. The Board clarified that despite the appellant's status as a probationer, "the evidentiary burden on the agency with respect to a whistleblower reprisal claim is no less than when the appellant is a tenured employee," and the agency "must still show by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing." *Id.*, ¶ 19 n.4.

¶20 Consequently, to whatever extent the administrative judge in this case may have implied that a lesser burden than "clear and convincing evidence" is applicable in IRA appeals when the appellant is serving in a probationary period,

we modify the initial decision to clarify the appropriate standard. Nevertheless, a different result is not warranted here because we agree with the administrative judge's ultimate conclusion that the entirety of the record, including the documentary and testimonial evidence from agency management officials addressing the appellant's performance and management deficiencies, supports a finding that the agency proved by clear and convincing evidence that it would have reassigned the appellant to a nonsupervisory position even in the absence of her protected disclosure.

The administrative judge appropriately weighed the second and third Carr factors.

¶21 Addressing the second *Carr* factor, the appellant argues on review that the administrative judge improperly discounted the importance of her whistleblowing disclosure and the fact that steps were being taken at the highest levels to address deficiencies in the agency's audit process in finding no agency motive to retaliate against the appellant because of her disclosure. 0742 PFR File, Tab 1 at 10-11; 0742 ID at 13-14. As the administrative judge correctly observed, although several audits were rescinded following a peer review of the agency's auditing process by an external agency, there is no evidence in the record that the appellant's disclosures regarding GAGAS-related deficiencies had any relation to the rescinded audits or that any of the agency officials involved in the probationary termination decision were implicated by the appellant's disclosure. 0742 ID at 13-14; *see Miller v. Department of Justice*, 842 F.3d 1252, 1261-62 (Fed. Cir. 2019) (noting that in analyzing the second *Carr* factor, retaliatory motive should be viewed broadly, explaining that "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees").

¶22 There is also no evidence that the appellant had any involvement in the single peer-reviewed audit that was rescinded due to noncompliance with

GAGAS, and agency officials testified consistently that the appellant's disclosures of the shortcoming of the agency's audit templates had no bearing on the decision to terminate her supervisory probationary period. 0742-W-4 AF, Tab 22 at 108-10; 0742 HR 2 at 26:00-27:30 (testimony of the appellant's former first-line supervisor) (denying that he gave any weight to the appellant's whistleblowing disclosure in deciding to terminate the appellant's probationary period, noting that the audit templates were "not cast in stone," and that it was his expectation that employees would alter the templates to resolve any deficiencies that may have been discovered); 0742 HR 3 at 22:10-23:30 (testimony of the appellant's second-line supervisor) (stating that the appellant's whistleblowing disclosure "meant nothing to [her]" and had "no effect" on her decision to curtail the appellant's probationary period). Accordingly, we find no reason to disturb the administrative judge's findings on this issue.

¶23 Regarding the third *Carr* factor, which considers whether the agency takes similar actions against similarly situated non-whistleblowers, the administrative judge concluded that the purported comparator the appellant presented was not a valid comparator for the following reasons: (1) unlike the appellant, she was not serving in a supervisory probationary period; (2) the performance deficiency the appellant identified—the retraction of an audit—was not the type of deficiency that ordinarily would result in a supervisory termination; and (3) the agency officials consistently testified that the purported comparator was not at fault for the alleged deficiency that resulted in the retraction of an audit. 0742 ID at 14-15. The appellant argues on review that the employee was a valid comparator because she performed the same essential job functions as the appellant and was managed by the same supervisors. 0742 PFR File, Tab 1 at 11.

¶24 Under the third *Carr* factor, the Board considers evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr*, 185 F.3d at 1323. Because the burden rests with the agency to prove that it would have taken the same action absent the

protected whistleblowing activity, the agency's failure to produce comparator evidence if it exists "may be at the agency's peril," and "may well cause the agency to fail to prove its case overall." *Soto*, 2022 MSPB 6, ¶ 18 (quoting *Whitmore*, 680 F.3d at 1374-75). Additionally, the Federal Circuit has made clear that the "importance and utility [of the third *Carr* factor] should not be marginalized by reading it so narrowly as to eliminate it as a helpful analytical tool." *Whitmore*, 680 F.3d at 1374.

¶25　　We nevertheless agree with the administrative judge that the employee the appellant identified is not a valid comparator. As the administrative judge correctly observed, the appellant's supervisory period was ultimately curtailed based on her performance and management deficiencies, particularly related to her inability to receive constructive feedback and to adequately manage her team, and not due to the retraction of an audit. 0742 ID at 11-12; 0742 HR 2 at 5:30-10:35 (testimony of the appellant's first-line supervisor discussing the appellant's supervisory deficiencies during the period immediately preceding the termination of her probationary period); 0742 HR 3 at 1:30-8:45, 9:30-21:00 (testimony of the appellant's second-line supervisor discussing the same). Consequently, the purported comparator employee, who had an audit retracted, is not a valid comparator.

¶26　　In sum, we agree with the administrative judge's finding that all three *Carr* factors weigh in the agency's favor and so the agency proved by clear and convincing evidence that it would have terminated the appellant's supervisory probationary period even in the absence of her protected whistleblowing activity. Consequently, we affirm the administrative judge's finding that the appellant is not entitled to corrective action in the 0742 appeal.

<u>We decline to disturb the administrative judge's findings in the 0039 appeal and affirm the initial decision in that appeal.</u>

¶27　　The appellant argues on review in the 0039 appeal that the administrative judge erred by finding that she failed to prove that her protected disclosure was a

contributing factor in her nonselection for the August 2018 IQO detail, the February 2020 QMT Director position, and the April 2020 EPA Lead Auditor position.[3]  0039 PFR File, Tab 5 at 10-24.  She also argues that the administrative judge erred by finding that the agency proved by clear and convincing evidence that the agency would have failed to select her for the 2019 IQO detail absent her protected disclosure.  *Id.* at 24-29.

2018 IQO detail nonselection

¶28    Regarding her nonselection for the August 2018 IQO detail, the appellant argues that her second-line supervisor, who had knowledge of her protected disclosure, provided information about the detail opportunity to her first-line supervisor, thereby influencing the decision not to select her for the detail and that the administrative judge erred by determining that her claim that the second-line supervisor influenced the nonselection decision was "purely speculative."  0039-W-4 AF, Tab 5 at 8, 11, 13-14.

¶29    In the initial decision, the administrative judge considered but rejected the appellant's argument that her second-line supervisor influenced the decision not to select her for this detail, noting that the supervisor credibly testified that her only communication to the appellant's first-line supervisor regarding the detail was to inform her that a memorandum would be issued regarding the application process for the position.  0039-W-4 AF at 9.  Additionally, although the appellant alleged that her second-line supervisor influenced her first-line supervisor by discussing the detail with her, as she acknowledges on review, her first-line supervisor was not the selecting official for the detail; instead, the Assistant

---

[3] Aside from stating that she was not referred for the Supervisory Auditor position with DCAA "although she was referred for the types of positions in the past," the appellant does not otherwise address this nonselection decision or the administrative judge's finding that she had not provided any documentary or testimonial evidence regarding her nonselection for the DCAA position and so she failed to meet her jurisdictional burden for this position.  0039 PFR File, Tab 5 at 23; 0039 ID at 10.  Accordingly, we find no reason to disturb the administrative judge's findings regarding this purported personnel action and have not addressed it further.

Inspector General (AIG) for Audits was the selecting official, and the administrative judge correctly determined that the appellant had not provided any evidence that her second-line supervisor influenced the AIG's decision not to select the appellant for the position. 0039 PFR File, Tab 5 at 12; 0039-W-4 AF, Tab 13 at 33-36; 0039 ID at 9-10.

¶30    Regarding other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed towards the officials taking the action, and whether these individuals had a desire or motive to retaliate against the appellant, as the administrative judge noted, the appellant did not call the selecting official for this position, the AIG, to testify at the hearing, and there is no other evidence in the record regarding the agency's reasons for choosing the eventual selectee for this position.[4] Additionally, there is no evidence indicating that the appellant's whistleblowing disclosure concerning the agency's failure to comply with the GAGAS standards was personally directed at the AIG. Further, although the appellant testified that all of the Deputy Assistant Inspectors General had input in the decision not to select her for the 2018 IQO detail—a group that would have included the appellant's second-line supervisor who was aware of her whistleblowing activity—she has not offered any evidence or argument indicating

---

[4] The appellant also argues on review that the agency committed harmful error by failing to inform her that two of her potential witnesses had retired from Federal service prior to the scheduled hearing and that the administrative judge erred when he "abused his discretion and did not enforce compliance" on the agency based on its failure to inform the appellant of the retirement of the two potential witnesses. 0039 PFR File, Tab 5 at 11-13. As the agency correctly notes, the administrative judge approved both retired former Federal employees as witnesses for the appellant prior to the hearing, and the appellant did not object to the prehearing conference summary informing her that she was responsible for producing both witnesses at the hearing. 0039-W-4 AF, Tab 23 at 4-5. Additionally, the appellant did not seek subpoenas for either witness and did not raise any objections on the record at the hearing regarding the unavailability of either witness. 0039-W-4 AF, Tab 28, Hearing Recording 5 at 0:15-0:50 (statements by the appellant's attorney acknowledging that both witnesses had retired from Federal service and were unavailable to testify at the hearing); *see* 5 C.F.R. § 1201.85 (setting forth the procedures by which parties may seek and enforce Board subpoenas for documents or testimony).

that her second-line supervisor influenced the AIG's decision not to select her for this position. 0039-W-4 AF, Tab 28, Hearing Recording (0039 HR) at 7:30-8:35 (testimony of the appellant).[5] Accordingly, we conclude that the appellant has also failed to establish contributing factor based on evidence other than knowledge/timing evidence. *See Dorney*, 117 M.S.P.R. 480, ¶ 15.

March 2020 QMT Director nonselection

¶31 Regarding her nonselection for the QMT Director position in March 2020, the appellant principally challenges the administrative judge's credibility determinations. 0039 PFR File, Tab 5 at 16-18, 26. Specifically, she asserts that the testimony of one of the officials who served on the selection panel for this position concerning the participation of another panel member was inconsistent and contradictory, and notes that an administrative judge in a different Board appeal declined to credit that witness's testimony. *Id.* She also argues that agency officials provided varying and inconsistent testimony about the reason she was not selected for the position and so the administrative judge erred by crediting their testimony concerning this nonselection. *Id.* at 26.

¶32 The appellant's challenges to the administrative judge's credibility determinations do not warrant reaching a different conclusion here. The evaluation of witness credibility is a matter within the administrative judge's discretion, and an administrative judge's credibility determinations are "virtually unreviewable." *Frey v. Department of Labor*, 359 F.3d 1355, 1361 (Fed. Cir. 2004); *Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 13 (2015), *aff'd*, 652 F. App'x 971 (Fed. Cir. 2016). The Board will not disturb an administrative judge's findings when he considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997); *Broughton v.*

---

[5] Indeed, the appellant failed to elicit any testimony from her second-line supervisor about any potential influence she may have had over the appellant's nonselection for the August 2018 IQO detail. 0039 HR 3 at 31:20-53:46 (testimony of the appellant's second-line supervisor).

*Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987). The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Moreover, mere disagreement with an administrative judge's credibility determinations and findings of fact fail to provide a basis for granting review. *Diggs v. Department of Housing and Urban Development*, 114 M.S.P.R. 464, ¶ 8 (2010).

¶33       Regarding the appellant's specific challenge to the testimony by one of the panel members for the QMT position, the appellant relies on inconsistencies in his testimony concerning whether the appellant's second-line supervisor served as a panel member for the selection for this vacancy in arguing that his testimony was not credible, highlighting his testimony stating at different times that the second-line supervisor was not on the panel and at other times that he could not recall or was uncertain whether she was on the panel. 0039 PFR File, Tab 5 at 16-18. She also asserts that proceedings in a prior Board appeal were "halted" and the appeal was eventually resolved against the agency when the administrative judge deciding that appeal was presented with information that called into question this witness's credibility. *Id.* at 18.

¶34       Here, although the administrative judge did not make specific demeanor-based credibility determinations or cite to the Board's decision in *Hillen v. Department of the Army*, 35 M.S.P.R. 453 (1987), in the initial decision, he heard live testimony from the witnesses, and his decision to credit specific testimony must be deemed to be at least implicitly based upon witness demeanor. *See Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 4 (2009). Further, the only testimony the administrative judge cited from this panelist regarding this vacancy concerned whether the appellant's second-line supervisor participated in interviews for the QMT Director vacancy, and the other two

panelists, as well as the appellant's second-line supervisor, all provided consistent testimony stating that the second-line supervisor was involved in the panel but did not participate in the appellant's interview. 0039 HR 2 at 5:30-9:03 (testimony of interview panelist); 0039 HR 3 at 35:50-37:50 (testimony of the appellant's second-line supervisor); *see Hillen*, 35 M.S.P.R. at 458 (identifying facts an administrative judge should consider in making credibility findings, including the consistency or inconsistency of a witness's version of events with other evidence). The administrative judge ultimately concluded that the appellant had not provided any evidence demonstrating that her second-level supervisor informed or otherwise influenced the other panel members in the decision not to select the appellant, and the appellant has not provided any reason to disturb this finding on review. 0039 ID at 13-14. Consequently, to the extent the administrative judge erred by relying on the panelist's testimony on this point, any such error is immaterial and was not prejudicial to the appellant. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

April 2020 EPA Lead Auditor

¶35    With respect to the appellant's nonselection for the EPA Lead Auditor position in April 2020, she appears to argue on review that the administrative judge erred by finding that her claim that an agency employee who later became employed by the EPA may have influenced her nonselection for this position was "wholly speculative" and so she failed to establish that her protected disclosure was a contributing factor in her nonselection for this position. 0039 PFR File, Tab 5 at 22-23. Specifically, the appellant testified that during her interview for the EPA Lead Auditor position, the interviewing official asked her questions about actual or potential equal employment opportunity (EEO) complaints against her, and at the time the appellant was engaged in EEO mediation against her employing agency, which raised her suspicion that someone may have alerted the

interviewing official to her ongoing EEO activity. 0039 HR 4 at 10:50-11:59 (testimony of the appellant). She testified that her suspicion was further elevated when she later found out that a former agency official later became employed by EPA. *Id.* at 12:00-12:35 (testimony of the appellant).

¶36 Addressing the appellant's testimony on this point in the initial decision, the administrative judge noted that the appellant had not requested any witnesses from EPA to testify at the hearing and that the former agency official who later joined EPA denied communicating with anyone at EPA about the appellant. 0039 ID at 14-15. The administrative judge further observed the fact that the former agency official who later joined EPA did not first interview with that agency until June 2020 and was not hired until September 2020—the earlier date being more than 2 months after EPA failed to select the appellant for the Lead Auditor position. ID at 15. Consequently, he determined that the appellant failed to prove by preponderant evidence that her protected disclosure concerning the agency's purported noncompliance with GAGAS was a contributing factor in her nonselection for this position. 0039 ID at 15.

¶37 Regarding other potential evidence for proving contributing factor, the only documentary evidence the appellant provided regarding this position was a copy of a LinkedIn profile page for the eventual selectee for the position as well as a "Candidate Comparison" spreadsheet she created comparing her credentials to those of the selectee. 0039 IAF, Tab 1 at 13; 0039-W-4 AF, Tab 13 at 55-56. As the administrative judge correctly observed, the appellant failed to produce witness testimony or any other documentary evidence from a selecting official at EPA for this position or even to identify the EPA selecting official for this position, and so there is no evidence in the record pertaining to the potential strength or weakness of EPA's nonselection decision. 0039 ID at 15; *see Dorney*, 117 M.S.P.R. 480, ¶ 15. The appellant also has not alleged that her whistleblowing activity was personally directed at either the EPA selecting official for this position or at the agency official who later joined EPA, or that

either official had any desire or motive to retaliate against her. Consequently, we agree with the administrative judge's finding that the appellant failed to prove that her whistleblowing disclosure was a contributing factor in this nonselection decision.

March 2019 IQO detail

¶38 Finally, regarding her nonselection for the March 2019 IQO detail position, the appellant appears to argue that the administrative judge improperly weighed the *Carr* factors in finding that the agency proved by clear and convincing evidence that it would not have selected the appellant for this detail appointment absent her whistleblowing activity. 0039 PFR File, Tab 5 at 25-29. Specifically, the appellant argues that the agency's stated reasons for failing to select her for the March 2019 IQO detail are weak, and so the administrative judge erred by finding that this factor weighed in the agency's favor. *Id.* at 25. To support her argument, the appellant points to her positive performance ratings and alleges that the agency's stated reasons for choosing the selectee for the detail, including the fact that the selectee could be more readily assigned with minimal disruption, were "incredulous," highlighting testimony from her former first-line supervisor noting that the appellant was a good fit for the detail and that she could have naturally transitioned to the position. *Id.* She also highlights the fact that her second-line supervisor who was aware of her whistleblowing activity was involved in the selection decision and appears to suggest that the supervisor may have influenced her nonselection. *Id.*

¶39 The administrative judge specifically addressed the appellant's argument challenging the agency's stated reasons for choosing the selectee, crediting the documentary evidence from the selecting official noting that the selectee was chosen, in part, due to the minimal disruption her reassignment would cause, as well as the testimony from two other agency officials stating that the selectee had more relevant experience than the appellant. 0039 ID at 16; 0039-W-4 AF, Tab 13 at 27; 0039 HR 1 at 27:50-31:50 (testimony from a former Deputy AIG

for Audits) (acknowledging that the former AIG was the selecting official for this detail and that the selectee had previously worked in the IQO office and was the "best suited" for that position).

¶40 The administrative judge also addressed the appellant's argument that the selecting official for the March 2019 IQO detail had constructive knowledge of the appellant's whistleblowing activity in analyzing the second *Carr* factor. 0039 ID at 16-17. Specifically, the administrative judge acknowledged the appellant's argument that her second-line supervisor who had actual knowledge of the whistleblowing activity may have influenced the selecting official. 0039 ID at 16-17. He nevertheless appropriately concluded that there was no evidence that the second-line supervisor exerted any influence on the selecting official, noting that there was no testimonial or documentary evidence showing that the supervisor influenced the AGI's nonselection decision. 0039 ID at 17 (citing *Staub v. Proctor Hospital*, 562 U.S. 411 (2011)).

¶41 The administrative judge further determined that there was no evidence of an institutional or professional retaliatory motive because knowledge of the appellant's disclosure within the agency was very limited, there was no evidence that the appellant's GAGAS disclosure broadly implicated management officials or employees in general, and the management officials credibly testified that the impact and import of the appellant's disclosure was minimal. 0039 ID at 17-18 (citing *Soto*, 2022 MSPB 6, ¶ 14); 0039 HR 3 at 46:30 (testimony of the appellant's second-line supervisor acknowledging that she received an email from the appellant regarding her whistleblowing disclosure but that the email "meant nothing to [her]" when she received it); *see Miller*, 842 F.3d at 1261-62. Aside from generally reasserting that her whistleblowing disclosure could have reflected poorly on her second-line supervisor and the agency at large, the appellant has not provided any additional evidence of potential retaliatory motive by any agency official, and we find no reason to disturb the administrative judge's findings regarding the second *Carr* factor.

¶42    Finally, the appellant argues on review that the administrative judge erred by finding that there were not any valid comparators in analyzing the third *Carr* factor and identifies two selectees that she argues were properly offered as comparators.  0039 PFR File, Tab 5 at 28-29; 0039 ID at 18-19.  One of the individuals was selected for the QMT Director position in March 2020, and the other individual was selected for a position as Audit Director of the Infrastructure Protection and Disaster Management Division (formerly known as the Disaster Management and Infrastructure Protection division).  0039 IAF Tab 6 at 9; 0039-W-4 AF, Tab 13 at 38-39.  There is no evidence in the record that either individual applied to or was selected for the March 2019 IQO detail, and so the appellant has failed to prove that they were treated more favorably than she was for the purpose of analyzing the third *Carr* factor in the context of the appellant's nonselection for the March 2019 IQO detail position.

¶43    In sum, we agree with the administrative judge's finding that the appellant failed to meet her burden of proving that her protected disclosure was a contributing factor in her nonselection for the August 2018 IQO detail, the February 2020 QMT Director position, the January 2019 DCAA Supervisory Auditor position, and the April 2020 EPA Lead Auditor position.  We further agree with his finding that the agency proved by clear and convincing evidence that it would not have selected the appellant for the March 2019 IQO detail even in the absence of her protected whistleblowing activity.  Consequently, we affirm the administrative judge's finding that the appellant is not entitled to corrective action in the 0039 appeal.

¶44    For the foregoing reasons, we deny the petitions for review and affirm the initial decisions in these joined appeals, as modified herein.

**NOTICE OF APPEAL RIGHTS**[6]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:               _____
                             Gina K. Grippando
                             Clerk of the Board

Washington, D.C.